1

2

3

4

5

6                         IN THE UNITED STATES DISTRICT COURT

7                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

ROBERT D. PEDRANTI JR.,                           No.  C 04-3087 MJJ

10

              Plaintiff.

11                                                **ORDER GRANTING DEFENDANT'S**
                                                  **MOTION FOR SUMMARY JUDGMENT**
      v.
                                                  **DENYING PLAINTIFF'S MOTION FOR**
12                                                **SUMMARY JUDGMENT**
JOANNE B. BARNHART,

13

              Defendant.

14

15  _____/

16

17                                **INTRODUCTION**

18        Before the Court are cross-motions for summary judgment in a Social Security appeal

19  brought by Robert Pedranti ("Plaintiff") and Joanne B. Barnhart, Commissioner of the Social

20  Security Administration ("Defendant").  These motions require the Court to determine if (1)

21  substantial evidence exists in support of the Administrative Law Judge's ("ALJ") decision, and (2)

22  correct legal standards were applied.  For the reasons set forth below, the Court **GRANTS**

23  Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

24                                **BACKGROUND**

25  **A.      Factual Background**

26        Plaintiff completed his education through the eighth grade.  As a result of his chronic lack of

27  attendance noted throughout his academic records, his reading, writing and math skills are poor.

28  After leaving school in 1991, Plaintiff held various short-term, temporary jobs such as a bell ringer

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    for the Salvation Army and various landscaping and warehouse jobs, but he has not worked since his

2    last warehouse job in 1998.  Plaintiff filed his application alleging disability due to non-exertional

3    disabilities, specifically depression, cognitive impairment, anxiety, and dyslexia.  Plaintiff alleges

4    that the severity of his disability prevents him from performing basic work activities because he is

5    unable to concentrate and has a deficient short-term memory.  Plaintiff testified, as did his father and

6    grandmother, that Plaintiff is unable to hold a job because of his lack of concentration and slow

7    performance.

8         Plaintiff does not take any medications for his alleged depression and anxiety, and is not

9    pursuing mental health counseling because he cannot afford it.  As he has no treating physician, his

10   medical record consists of three opinions from examining physicians, one opinion from the

11   reviewing state agency physicians, and the opinion of a medical expert during his hearing.

12        Dr. Laurie R. Weiss examined Plaintiff on January 17, 2000.  In this "limited" evaluation,

13   Dr. Weiss found Plaintiff to have low-average to average cognitive potential, and concluded Plaintiff

14   was capable of "perform[ing] simple and uncomplicated one and two step instructions."

15   (Administrative Record ("AR") at 222.)  Dr. Weiss also asserted that it "appears that [Plaintiff] is a

16   poor candidate for the work environment."  (AR at 223.)  She attributed this assessment at least

17   partly to a seeming lack of motivation.  She also noted that Plaintiff appeared to have poor

18   concentration and memory skills, perhaps due to the "symptoms of anxiety" and "indicators of

19   depression present" in the test results.

20        Dr. Morey Weingarten conducted a psychiatric examination of Plaintiff on August 30, 2002.

21   Dr. Weingarten found no symptoms of anxiety and could not confirm the existence of any depressive

22   disorder.  He also concluded there was no "notable evidence of any cognitive impairment," learning

23   disorder, or attention deficit disorder.  As a result, Dr. Weingarten felt Plaintiff could function

24   effectively in a "typical workplace."  (AR at 251.)

25        State agency physicians reviewing these two evaluations concluded that while Plaintiff's

26   ability to carry out detailed instructions was moderately limited, his concentration, attention, and

27   ability to carry out simple instructions were not significantly limited.  (AR at 226.)

28        Dr. Lloyd Meadows, who testified as a medical expert during Plaintiff's hearing, utilized

United States District Court

For the Northern District of California

1  these sources and the record as a whole to conclude that any cognitive impairment suffered by

2  Plaintiff was not clearly established.  Dr. Meadows concluded that Plaintiff's learning deficits were

3  attributable to his chronic lack of attendance while in school.  Dr. Meadows also noted that Dr.

4  Weiss did not conduct all the necessary testing and therefore found her findings to be speculative.

5  However, Dr. Meadows did conclude, similarly to Dr. Weiss, that Plaintiff may suffer from a

6  depressive disorder and/or anxiety.

7  After the hearing and subsequent denial, Plaintiff received another medical evaluation by Dr.

8  Terrance Riley on June 5, 2003, which was added to the record and considered with his request for

9  review of the ALJ's decision.  Riley concluded Plaintiff had an IQ in the low-average range.  He

10  also found Plaintiff had a "marked weakness" in his auditory working memory, and had "severe

11  learning deficits in reading, writing and math skills."  (AR at 259.)

12  Plaintiff lives with his grandmother, and spends a majority of his time playing video games,

13  working out, socializing with others, completing chores, and attending community festivals.  (AR at

14  148).  His chores include cooking, doing laundry, going to the grocery store, and assisting his

15  grandmother around the house.  (AR at 54.)

16  **B.      Procedural Background**

17  On December 10, 1999, Plaintiff filed an application for Supplemental Security Income

18  ("SSI") benefits under Title XVI of the Social Security Act.  The SSA denied the application

19  initially on February 10, 2000, and upon reconsideration on May 10, 2000.  On June 3, 2000,

20  Plaintiff requested a hearing before an ALJ, and Plaintiff appeared with counsel before an ALJ on

21  October 30, 2000.  On December 20, 2000, the ALJ denied Plaintiff's application.  The case was

22  later remanded after the Office of Hearings and Appeals ("OHA") conducted a review of the

23  decision.

24  On June 10, 2002, a second hearing was held by a different ALJ.  At that hearing, Dr.

25  Meadows testified as a medical expert.  Dr. John Velton testified as a vocational expert ("VE"), and

26  indicated claimant could successfully perform four occupations:  Construction laborer, gardener,

27  automobile detailer, and any simple, repetitive occupation, such as wall cleaner.  Dr. Velton based

28  his assessment on a person with mild limitations on daily activities, social functioning,

1    concentration, persistence and pace, who could complete one to two step instructions and had a

2    limited ability to read and write.  The ALJ again found that Plaintiff was not disabled because he

3    was able to perform simple, entry-level occupations existing in significant numbers, and he therefore

4    denied the application on November 22, 2002.

5         The ALJ's decision became final when the OHA declined Plaintiff's request for review on

6    May 28, 2004.  In its explanation denying the request for review, the SSA stated that the post-

7    hearing psychological report conducted by Dr. Riley and added to the record contained "no

8    indication of how [Plaintiff's] scores would or would not affect work-related functional activities."

9    Therefore, the OHA concluded that the additional information did not provide evidence requiring the

10   reversal of the ALJ's decision.  After receiving this denial, Plaintiff filed the current action for

11   judicial review pursuant to 42 U.S.C. § 405(g).

12                                    **LEGAL STANDARD**

13        Summary judgment is appropriate if there are no genuine issues as to any material fact and

14   the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The Court may

15   disturb the Commissioner's final decision "only if it is based on legal error or if the fact findings are

16   not supported by substantial evidence." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

17   Substantial evidence is more than a mere scintilla, but less than a preponderance. *Magallanes v.*

18   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  "[C]onsidering the entire record, [substantial evidence]

19   is relevant evidence which a reasonable person might accept as adequate to support a conclusion."

20   *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993).  Determinations of credibility, resolution of

21   conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  *Magallanes*,

22   881 F.2d at 750.  The decision of the ALJ will be upheld if the evidence is "susceptible to more than

23   one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).

24        To qualify for Title XVI benefits, a claimant must establish a medically determinable

25   physical or mental impairment that is expected to result in death or last for a continuous period of at

26   least twelve months that prevents him from engaging in substantial gainful activity.  42 U.S.C. §

27   423(d)(1)(A).  In addition, to establish a disability, an individual "must show that he is precluded

28   from engaging not only in his 'previous work,' but also from performing 'any other kind of

4

1  substantial gainful work that exists in the national economy.'" *Matthews*, 10 F.3d at 680; 42 U.S.C.

2  §§ 423(d)(2) (A) and 1382c(a)(3)(B).

3  **ANALYSIS**

4  To determine whether a claimant is disabled and entitled to benefits, the Commissioner of

5  Social Security conducts a five-step sequential inquiry.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

6  Under the first step, the ALJ considers whether the claimant is currently engaged in substantial

7  gainful activity.  If not, the second step asks whether the claimant has a severe impairment.  In step

8  three, the ALJ determines whether the claimant has a condition which meets or equals the conditions

9  outlined in the Listings of Impairments in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R.

10  § 404.1520.  If the claimant does not have such a condition, step four asks whether the claimant has

11  the RFC to perform his past relevant work.  If not, in step five, the ALJ considers whether the

12  claimant has the ability to perform other work which exists in substantial numbers in the national

13  economy.  20 C.F.R. § 404.1520(b)-(f); 404.920(b)-(f).  While the burden is on the claimant to

14  demonstrate the first four requirements, the burden shifts to the Secretary in step five.  *Andrews v.*

15  *Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).

16  The ALJ considered the first four steps of the five-step sequential process and found that

17  Plaintiff was disabled.  At the first step, the ALJ found that Plaintiff had not engaged in substantial

18  gainful activity because he had not worked since applying for disability benefits.  At step two, he

19  found Plaintiff suffered from a severe depressive disorder which limited his ability to perform basic

20  work activities.  At step three, he found that Plaintiff's impairments did not meet or equal the listed

21  impairments located in the Listing of Impairments, Appendix 1, and thus Plaintiff could not be

22  labeled as conclusively disabled.  At step four, the ALJ could not determine if Plaintiff had the RFC

23  to perform his past relevant work because there was no relevant prior work experience.  However, at

24  step five, the ALJ found that because Plaintiff was capable of performing occupations existing in

25  significant numbers, he was not disabled by SSA standards.

26  Plaintiff contends that (1) the ALJ's conclusion that Plaintiff has an Residual Functional

27  Capacity ("RFC") to perform simple, entry-level work is not supported by substantial evidence; and

28  (2) the ALJ improperly relied on the VE's testimony at the hearing, during which he asserted that a

1   significant number of occupations existed in the local economy that Plaintiff could perform.

2

3   **A.      The Medical Evidence, Testimony of Expert, and the Record Provide Substantial Evidence Supporting the ALJ's Denial.**

4          Plaintiff asserts that the ALJ's determination was not supported by substantial evidence

5   because the ALJ improperly rejected Dr. Weiss's finding that he is a poor candidate for the work

6   environment.  Defendant argues that the ALJ did not reject Dr. Weiss's opinion, but rather properly

7   exercised his authority to interpret ambiguities in the medical evidence.  Therefore, Defendant

8   asserts that the medical evidence, including Dr. Weiss's opinion, is consistent with the ALJ's

9   decision, and, along with other evidence submitted, provides substantial evidence for the denial.

10         The opinion of an examining physician is ordinarily entitled to substantial weight.  *Morgan*

11  *v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).  If the ALJ chooses to

12  reject such an opinion, he must set forth "specific and legitimate reasons" for doing so which are

13  "supported by substantial evidence in the record."  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.

14  1995).  However, where medical evidence is susceptible to more than one rational interpretation, the

15  ALJ's chosen interpretation is not a rejection of the opinion, and it should therefore be upheld.

16  *Magellenes*, 881 F.2d at 750.

17         Upon review of Dr. Weiss's findings, the Court finds that the ambiguity of the various

18  conclusions within her evaluation of Plaintiff could lead to different interpretations of her ultimate

19  assessment.  While Dr. Weiss found Plaintiff to be a "poor candidate for the work environment," she

20  also concluded that Plaintiff is capable of performing simple one and two step work, and also noted

21  that "any difficulty functioning in employment, would be a function . . . of a lack of motivation."

22  (AR at 21.)  Considering Dr. Weiss's findings in their entirety, the ALJ consequently chose to

23  interpret Dr. Weiss's findings as meaning that while Plaintiff is a poor candidate for the workplace

24  in general, in part because of his motivational problems, Plaintiff is nonetheless capable of certain

25  simple, entry-level work.[1]  Therefore, rather than rejecting Dr. Weiss's opinion that Plaintiff was

26  unsuitable for the workplace, the ALJ fulfilled his duty to "resolve conflicts and ambiguities in the

27

28         [1] The ALJ resolved any conflict in Dr. Weiss's two statements by finding that "while Dr. Weiss characterized the claimant as a 'poor candidate for the work environment,' she also found that he could perform simple one-step work[.]"  (AR at 21.)

6

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1   medical evidence" by rationally interpreting Dr. Weiss's evaluation in such a way that made her

2   findings within the evaluation consistent with each other.  *Magellenes*, 881 F.2d at 750.

3           The ALJ's interpretation of Dr. Weiss's findings was rational not only because it remedied

4   possible inconsistencies between Dr. Weiss's various conclusions, but also because it minimized

5   conflicts with the other medical evidence.  In the other medical evaluation provided, Dr. Weingarten

6   found Plaintiff only had "mild short term memory problems" and "no deficits in concentration," and

7   concluded that Plaintiff should "have no difficulty functioning effectively in the workplace."  (AR at

8   21.)  As these findings conflict with Dr. Weiss's "poor candidacy" assessment, the ALJ exercised his

9   authority to resolve the conflicts between these two evaluations.

10          However, Plaintiff argues Dr. Riley's post-hearing evaluation demonstrates that the ALJ's

11  interpretation of Dr. Weiss's findings was incorrect.  The OHA considered Dr. Riley's evaluation

12  and determined that Dr. Riley's findings did not affect the ALJ's decision because "there was no

13  indication of how [the evaluation] would or would not affect work-related functional activities."

14  (AR at 8.)  The Court agrees.  Plaintiff fails to indicate any finding by Dr. Riley that supports the

15  conclusion that he is unable to work, and the study itself does not even discuss how Plaintiff's

16  impairments affect his work ability.[2]  Therefore, the ALJ's interpretation of Dr. Weiss's statements

17  is not affected by Dr. Riley's study.

18          The ALJ's interpretation of Dr. Weiss's findings is also supported by testimony regarding his

19  daily activities.  Plaintiff and his family members testified to his ability to engage in daily activities

20  such as cooking, shopping, playing video games, exercising, and attending community festivals.

21  The ALJ noted this testimony in his decision.  (*See* AR at 21 ("[Claimant's] activities suggest an

22  ability to focus on activities on a sustained basis.")).  This, in addition to the lack of medical

23  evidence, allowed the ALJ to conclude that Plaintiff's depressive disorder does not sufficiently

24  interfere with his ability to focus on and engage in activities.

25          However, Plaintiff contends that his sporadic work history supports his interpretation of Dr.

26

27          [2] In Plaintiff's brief, he emphasizes that Dr. Riley recorded the same IQ scores as Dr. Weiss and
    verified his memory weaknesses.  However, these findings, without more, do not address Plaintiff's
28  work ability. Furthermore, while the record indicates that a career assessment inventory was completed
    with the study, Plaintiff failed to submit this part of the evaluation to the Court.

**United States District Court**
For the Northern District of California

1   Weiss's opinion that he is unsuitable for the workplace.  At his hearing, Plaintiff confirmed that he

2   had been fired from previous jobs because of his slow pace and making too many mistakes, and both

3   his father and grandmother confirmed this.  However, he also admitted that he was laid off from the

4   warehouses because they did not have any more work for him at that time.  Furthermore, at the

5   landscaping job where he was fired for not keeping pace, Plaintiff asserted that his boss was

6   "basically firing everybody left and right," indicating that his firing was perhaps attributable to an

7   overzealous employer rather than his shortcomings.  Therefore, although Plaintiff provides evidence

8   that he has difficulty functioning in some workplaces, there is also evidence that he is able to

9   succeed in others, and the ALJ did not err by interpreting Dr. Weiss's findings as indicating that

10   Plaintiff is able to perform certain occupations.

11        In sum, although there is some evidence supporting Plaintiff's contention that his disorder

12   renders him unable to work, there is substantial evidence both from the medical evaluations as

13   properly interpreted by the ALJ, and from the record as a whole, that Plaintiff is capable of

14   performing simple, entry-level work.

15
16        **B.        The Vocational Expert Erred by Supplying Occupations That Were Unsuitable For Plaintiff, But There Are Still Significant Numbers Of Available Occupations To Support the ALJ's Conclusions.**
17

18        As mentioned, once the claimant's RFC is determined, the burden shifts to the Commissioner

19   to prove that the claimant is capable of performing occupations which are available in sufficient

20   numbers in Plaintiff's local region.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

21   When a claimant has non-exertional impairments, the ALJ must elicit testimony from a VE in

22   making this determination.  *Id*.; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

23        Plaintiff contends that even if he is capable of simple entry-level work, the ALJ improperly

24   relied on the VE's testimony that Plaintiff could perform four occupations available in sufficient

25   numbers.  Plaintiff asserts that the mental capacity required for three of the four suggested

26   occupations as defined by the DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991) ("DOT")

27   exceeds Plaintiff's capacity for simple work, and further asserts that offering only one other

28   occupational option is insufficient.  Defendant counters that the VE may deviate from the DOT

United States District Court

For the Northern District of California

1   definitions, and argues that even if the deviation was improper, there are still a significant number of

2   simple, repetitive jobs in the region for Plaintiff to obtain employment despite his depressive

3   disorder.

4          According to the DOT, a reasoning level of 2 is needed to perform three of the occupations

5   suggested by the VE in the present case (construction laborer, yard worker, and automobile detailer).

6   To hold an occupation requiring level 2 reasoning skills, the employee must be able to "apply

7   commonsense understanding to carry out detailed but uninvolved written or oral instructions."

8   DICTIONARY OF OCCUPATIONAL TITLES 915.687-034 (4th ed. 1991).  On the other hand, a DOT

9   reasoning level of 1 requires "apply[ing] commonsense understanding to carry out simple one- or

10  two-step instructions."  DICTIONARY OF OCCUPATIONAL TITLES 381.687-026 (4th ed. 1991).

11         In his decision, the ALJ concluded that Plaintiff has the RFC to perform "simple entry level

12  work at all exertional levels."  (AR at 22.)  In the hypothetical describing Plaintiff's limitations

13  posed for the VE during the hearing, the ALJ defined "simple" as work that must be completed in

14  one- to two-steps, which matches the description of a reasoning level capability of 1 under the DOT.

15  (AR at 99.)  Further, the ALJ never asserted that Plaintiff has the ability to fulfill detailed

16  instructions, which is explicitly required for occupations requiring a reasoning level of 2.

17  Consequently, the VE deviated from the DOT by suggesting level 2 occupations for Plaintiff.

18         Vocational Experts may deviate from the DOT when making their assessments, but there is a

19  rebuttable presumption that the suggested occupations must be equivalent to Plaintiff's capacity as

20  determined by the DOT.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Therefore, the VE

21  must justify a deviation from the DOT with persuasive evidence from the VE's testimony and the

22  record.  *Id.*  Here, neither the ALJ nor the VE provided any justification for the VE's conclusion that

23  Plaintiff could perform jobs requiring comprehension of detailed instructions.  The VE testified that

24  the occupations of construction laborer, yard worker, and automobile detailer require reasoning

25  levels of 2, yet failed to explain his deviation from the ALJ's explicit hypothetical which states that

26  Plaintiff is only capable of following one or two step instructions.  The ALJ also failed to discuss the

27  VE's deviation from the DOT.  Consequently, because neither party rebutted the presumption set

28  forth in the DOT that Plaintiff is incapable of performing level 2 occupations, the ALJ improperly

9

**United States District Court**
For the Northern District of California

1   relied on the VE's testimony in three of the four suggested occupations.

2          However, although the ALJ improperly relied upon three of the suggested occupations, the

3   VE's fourth suggestion of simple, repetitive "cleaner work," such as the occupation of "wall

4   cleaner," appropriately falls under the DOT reasoning level 1.  (AR at 98); DICTIONARY OF

5   OCCUPATIONAL TITLES 381.687-026 (4th ed. 1991).  Plaintiff concedes this point, but argues that

6   identifying "one occupation is insufficient to sustain the Commissioner's burden."  (*See* Reply to

7   Cross-Motion at 5).  Plaintiff's argument is without merit.  According to 42 U.S.C. § 423(d)(2)(A), a

8   person must be unable to "engage in any other kind of substantial gainful work which exists in the

9   national economy" to be deemed disabled by Social Security standards.  20 C.F.R. § 404.1566(b)

10  states that this requirement is fulfilled when "there is a significant number of jobs (in *one or more*

11  occupations)" which the claimant can perform.  20 C.F.R. § 404.1566(b).  Therefore, the Court find

12  that the VE need not provide more than one possible occupation, so long as the single occupation

13  exists in significant numbers in the national economy.

14         The Court is also satisfied that these simple, repetitive occupations exist in significant

15  numbers in the national economy.  In his testimony, the VE confirmed there are 17,000 of these

16  occupations available locally and 741,000 nationally.[3]  (AR at 98.)   In *Moncada v. Carter*, 60 F.3d

17  521, 524 (9th Cir. 1995), the Ninth Circuit held that occupations with over 2,300 jobs locally and

18  with 64,000 jobs available nationwide met the "significant number" requirement under 42 U.S.C.

19  § 423(d)(2)(A).  As the number of potential jobs available to Plaintiff greatly exceeds the

20  occupational numbers discussed in *Moncada*, the ALJ correctly found that there are a significant

21  number of jobs in the region for Plaintiff to obtain employment despite his limitations.

22                                              **CONCLUSION**

23         For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment

24  and **DENIES** Plaintiff's Motion for Summary Judgment.

25  ///

26

27         [3] In his decision, the ALJ transposed the available numbers of simple, repetitive jobs with the
    numbers of automobile detailer jobs.  In his initial motion, Plaintiff transposed the numbers as well.
28  However, in the cross-motion, Defendant corrected the mistake, and Plaintiff was able to address the
    implications of the correct numbers in his Reply.

///

**IT IS SO ORDERED.**

Dated: August_11__, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California